72057. IN RE J. M. P.
72058. PIRKLE v. DEPARTMENT OF HUMAN RESOURCES.
(344 SE2d 520)

BIRDSONG, Presiding Judge.

Recovery of Public Assistance from Natural Parent. These two cases arise out of the same fact situation. The unfortunate circumstances of this case present a tortuous and circuitous course. J. M. P., now a 13-year-old male, is the issue of a marriage between John Pirkle and his ex-wife who now lives in New Jersey. The mother was granted custody of the infant J. M. P. and took him with her as she moved through several domiciles. She apparently married more than once, and by the time the child was 9 or 10 years of age, she was expecting another child. J. M. P. had demonstrated increasingly aggravated emotional problems and had run away more than once. Thus

because of the problems he presented, she eventually relinquished present and future custody. Accordingly, the father John Pirkle regained custody and the boy returned to Georgia. After a series of events culminating in yet another runaway, the father petitioned the court to adjudicate J. M. P. as an unruly delinquent. The boy was found and returned to the custody of his father. However at the hearing to determine unruliness brought by the father and in a private reconciliation meeting between father and son, a physical fight broke out between the father and minor son. Thereafter, DHR acting through the aegis of the Liberty County Department of Family & Children Services petitioned the juvenile court for an adjudication that J. M. P. was a deprived child, that custody should be removed from John Pirkle, and the child be considered for adoption.

The state sought a hearing to consider the question of the alleged deprived status of J. M. P. It was conducted by the juvenile court on February 15, 1985. At that hearing, the emotional state of J. M. P., his relationship with his father, and the legal probability of deprivation were explored. It was developed that J. M. P. was in a foster home and the state was expending $9.27 per day for J. M. P. as a payment to the contract foster parent. The trial court entered its order on February 15, 1985, finding that J. M. P. was a deprived child, confirmed temporary custody in DHR and ordered the father John Pirkle to pay certain medical expenses incurred by the juvenile and to pay to the state the sum of $9.27 per day. Pirkle objected to that portion of the order to pay child support, contending that he had received no notice that the hearing would consider support payments. He moved the court to vacate that portion of the order of February 15.

On April 11, 1985, the trial court conducted a second hearing on the state's deprivation petition and considered the motion to vacate the order of February 15. At that hearing the trial court laboriously traced the sequence of court appearances leading up to the February 15 hearing on deprivation. The court apparently was concerned about the capacity occupied by the father at the February 15 hearing (i.e., as a witness or a concerned parent) inasmuch as the father had been subpoenaed as a witness rather than as a parent and because the hearing by the state sought only to determine whether the child was deprived and did not seek reimbursement of support payments. The court ordered an investigation into the expenses of the child's custody, the ability of the father to pay, and the circumstances of the medical payments as well as future care. A third hearing was scheduled to answer these questions. After a delay, a third hearing was held on August 30, 1985. Evidence was submitted showing the costs incident to the contract foster care, medical expenses, and the financial ability of the father to pay.

Between the second hearing of April 11, 1985 and the third hearing on August 30, 1985, and at the suggestion of the juvenile court made during the April hearing, DHR filed a second or amended application on June 11, 1985, for a finding of deprivation with the juvenile court so as to include a demand for recovery of child support. Thus the hearing of August 30 responded to the order of the court of April 11 ordering such an investigation and to the petition of DHR of June 11 seeking recovery of child support payments. By its order entered on September 13, 1985, the trial court found J. M. P. to be deprived and ordered the father, John Pirkle, to institute a health and accident policy for the juvenile, pay past due child support in an amount of $886.50, future support payments of $295.95 per month and a service fee of $2, all such payments to be paid to the Office of the Receiver of Child Support.

The father, John Pirkle, brings his separate appeals to the deprivation case initiated by the state in February as well as his appeal to the order of the court of September 13, 1985, contesting the right and power of the state to seek reimbursement for child support payments. *Held*:

In substance, the appellant-father seeks only to question the propriety of the state's effort to obtain reimbursement for child care costs imposed upon the state by the juvenile code. He bases this upon the fact that the February hearing did not give him notice that child care support was a matter against which he would be required to defend and the August hearing sought reimbursement for costs which the state was obligated to spend because his dependent son refused to live in the home furnished by the father and rejected the support provided.

As to the hearing of February 15, OCGA § 15-11-56 (a) establishes the expenses that are to be a charge upon the funds of the county involving child support. These include medical expenses as well as the cost of care and support. Subsection (b) provides: "(b) If, after due notice to the parents . . . and after affording them an opportunity to be heard, the court finds that they are financially able to pay . . . the court may order them to pay the same and prescribe the manner of payment. . . . [P]ayment shall be made . . . if the costs and expenses have been paid by the county, to the appropriate officer of the county."

The provisions of this code section together with those of OCGA § 19-11-7 have relevance to our determination of these two related cases. As to the hearing of February 15, we conclude that the right of the juvenile court to order payment of support money by a natural parent for a dependent child statutorily is without question. However, the provisions of the statutory authority must be observed. Prior to the February 15 hearing, John Pirkle was informed of the hearing and

told that the issue of deprived status of his child would be litigated. There was no notice that the father's obligation to pay, his ability to pay, the expenses being incurred by the state, or even that the state sought reimbursement were to be involved in that hearing. The trial court's observations and the state's arguments that because Pirkle was before the court as a parent and was given the opportunity to question or offer evidence on these issues when they were first (and unexpectedly) broached, misses the point of notice. Granted Pirkle was present, he contended without dispute by the court or the state that he was wholly unprepared to proceed at that point on the issue of support payments. We conclude that the trial court erred at the February 15 hearing in ordering Pirkle to pay $9.27 per day where there had been no notice given to Pirkle nor did the state seek such payments in the hearing.

As to the validity of reimbursement to the state of the support costs and medical expenses incurred prior to the hearing of August 30 and continuing, we reach a different conclusion.

OCGA § 49-4-101 (1) in pertinent part defines "assistance" as: " 'Assistance' means money payments or medical care . . . or foster care in behalf of a dependent child. . . ." If assistance is paid by the county and a financially responsible parent is reachable, the county may seek reimbursement for the expenses incurred in treating the child and the disposition of his case. As indicated the proviso in the statute is that the parent be given notice of the state's intention and be given an opportunity to show there is no continuing obligation or that the parent already is furnishing all reasonable child support. In this case the juvenile court in its April 11 order directed a full investigation of all pertinent issues. See OCGA § 19-11-10. Evidence was presented to the court in the August 30 hearing of the medical expenses paid on behalf of the child, the costs of foster care and the ability of the father to pay those costs. Pirkle was present at that hearing and given full opportunity to litigate any issues. Thus, we are satisfied that the September 13 order fully satisfied all notice requirements and that Pirkle was present and afforded his day in court.

The only remaining question presented by Pirkle is the right of the "state" to seek reimbursement. DHR, in this case, is acting through the Liberty County Department of Family & Children Services. The expenses paid apparently are being paid by Liberty County. Thus though DHR is the nominal party acting on behalf of J. M. P., it always has acted and is acting through and on behalf of Liberty County. As earlier noted, OCGA § 15-11-56 (b) authorizes the juvenile court to order reimbursement of dependent care to the county paying those costs normally the legal obligation of a parent. That is all that has occurred in his case. Therefore, we find no error in the order of the court of September 13 directing Pirkle to make the

payments which are the subject of this appeal. Inasmuch as we conclude that the erroneous order of February 15 directing the same payments now merges into the legal order of September 13, the issue presented in case no. 72058 involving the February order is moot. The judgment in case no. 72057 is without error.

*Judgment in Case No. 72057 affirmed. Judgment in Case No. 72058 is dismissed. Banke, C. J., and Sognier, J., concur.*

DECIDED APRIL 9, 1986.

John E. Pirkle, *pro se.*
Dupont K. Cheney, *District Attorney*, J. Stephen Archer, *Assistant District Attorney*, for appellee.